UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REGINALD HOWARD, | Case No. 2:13-cv-01368-RFB-NJK |
| Plaintiff, | **OPINION & ORDER** |
| v. | Defendants' Motion for Summary Judgment |
| S. FOSTER, *et al.*, | (Dkt. No. 42) |
| Defendants. | |

### I.   INTRODUCTION

Before the Court is a supplemental Motion for Summary Judgment (Dkt. No. 42) filed by Defendants Aaron Dicus and Sean Bloomfield. For the reasons discussed below, the Motion for Summary Judgment is denied.

### II.   BACKGROUND

Plaintiff Reginald Howard filed this *pro se* civil rights action on October 22, 2013, alleging several causes of action against the Deputy Director of the Nevada Department of Corrections ("NDOC"), S. Foster, and eleven correctional officers employed by Southern Desert Correctional Center ("SDCC") in their official and individual capacities. Howard initially brought six claims under the First, Eighth, and Fourteenth Amendments, each arising from separate sets of facts. Based on the Court's rulings on Defendants' March 24, 2014 Motion to Dismiss, and Defendants' July 23, 2014 Motion for Summary Judgment, the only claims that remain in this case, aside from those at issue in the instant motion, are a First Amendment retaliation claim and an Eighth Amendment excessive force claim against Defendant Gustavo Sanchez.

The claims at issue in this Motion for Summary Judgment, filed by Defendants Aaron Dicus and Sean Bloomfield on January 27, 2016, are: an individual capacity claim alleging First Amendment Retaliation against Defendant Bloomfield for filing false charges against Howard, and an individual and official capacity claim alleging violation of Plaintiff's First Amendment Right to Free Exercise of Religion against Defendant Dicus for interruption of Muslim prayer services. These causes of action are brought pursuant to 42 U.S.C. § 1983. Howard filed his opposition on April 22, 2016, with appointed counsel through the Court's Pro Bono Pilot Program. Defendants filed a Reply on April 29, 2016. The Court held a hearing on this Motion for Summary Judgment on September 1, 2016.

### A. Undisputed and Disputed Facts

The Court incorporates its discussion of the undisputed and disputed facts from its hearing on September 1, 2016. The Court discusses and elaborates these facts here.

#### 1. First Amendment Retaliation Claim Against Bloomfield
##### a. Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiff Reginald Howard was in the custody of the NDOC and housed at SDCC from November 12, 2011 through August 19, 2012, the time period relevant to this action. On November 1, 2011, Howard filed a civil rights lawsuit in U.S. District Court against various correctional officials. On November 12, 2011, around 7:30 pm, Defendant Officer Sean Bloomfield searched Howard's cell and confiscated a hot pot and fan. During the search, Howard requested a grievance form because he believed his property was being wrongfully taken in retaliation for his civil rights lawsuit. Bloomfield placed the fan and hot pot in the Property Room.

The NDOC's Inmate Grievance Procedure administrative process consists of: (1) an Informal Level grievance that is reviewed and responded to by an inmate caseworker; (2) a First Level formal written grievance appealing the informal grievance decision to the warden; and (3) a Second Level grievance appealing the First Level decision, which is then decided by the Assistant Director of Operations. The same day that his cell was searched, on November 12,

1  2011, Howard filed an emergency grievance form. The form raises an allegation that his cell was
2  searched improperly and that he was told to stand against the wall with his arms on it or "hold"
3  the wall when he asked for a grievance form. It states that Howard believed the officers were
4  retaliating against him for requesting a grievance form, and for his pending civil lawsuit.

5        The NDOC responded to the informal grievance by determining that the issue was not an
6  emergency, and that Howard should follow up with a normal grievance. At about 10:20 pm on
7  that same date, November 12, Howard filed an informal grievance, raising substantially the same
8  allegations that were in his emergency grievance form. The informal grievance states: "This is
9  clear retaliation and punishment for pending civil action against the defendants and for
10 requesting a grievance." (Def.'s Ex. D). Defendant Bloomfield filed a Notice of Charges against
11 Howard for the incident on November 12, 2011. In the Notice, he charged Howard with
12 "Organizing a Work Stoppage/Demonstration" and "Giving False Information." The Notice
13 provided no further details as to the reason for those charges, and the Notice was not dated. The
14 Notice does not contain information on whether and when it was served to Howard.

15       Howard's informal grievance was denied on December 28, 2011. On January 5, 2012,
16 Howard filed a First Level grievance, requesting review of his denied informal grievance. In this
17 First Level grievance, he raises the issue of a "Notice of Charges" being filed against him
18 "because the evidence is clear the Defendants knew that grievances and civil action was
19 pending." The First Level grievance was denied on January 26, 2012. On February 1, 2012,
20 Howard filed a Second Level grievance requesting further review of the same complaint. This
21 was ultimately denied.

22       A disciplinary hearing was held on November 21, 2011. Plaintiff alleged in his
23 Complaint that, at this hearing, he informed the NDOC officials that 'he was never served or
24 given a written notice of charges." The charges were then read to him. Howard pled "Not Guilty"
25 at this hearing. His charge of "Work Stoppage/Demonstration" was amended to "Possession
26 Trade Unauthorized Property", and he was found guilty of that charge for his possession of the
27 fan. He was also found guilty of "Giving False Information", and sentenced to five days loss of
28 gym time.

### b. Disputed Facts

The parties dispute whether the "Work Stoppage/Demonstration" charge was a false charge with no basis. Howard alleges that it was filed in retaliation for requesting a grievance and for his pending civil rights litigation. Bloomfield alleges that it was a "catch-all" charge and was not falsely filed.

### 2. First Amendment Free Exercise Claim Against Defendant Dicus
### a. Undisputed Facts

The Court finds the following facts to be undisputed. On August 19, 2012, Plaintiff and other Muslim inmates were performing Islamic prayer services for the Eid holiday, in an approved area of the SDCC gym. Defendant Officer Dicus began yelling profanities at the participants. The prayer service was approved by NDOC officials.

### b. Disputed Facts

Howard claims that during the August 19, 2012 Eid prayer services, Dicus became so disruptive that the prayer had to be stopped, that Howard and other participants were unable to perform prayer chants ("the Takbir") that were fundamental to their Eid ceremony, and that "the spirit of prayer was gone." Howard alleges that Dicus also stated, in response to warnings from other Officers that grievances would be filed against him: "I don't care about a f---ing grievance because I kill Muslims." Defendant claims that Dicus' yelling did not prevent Howard and other inmates from completing the service, and therefore did not substantially burden the prayers. However, Defendants do not dispute the fact that Dicus was yelling, or the content of Dicus' speech.

Plaintiff alleges that Dicus has repeatedly shown a dislike in his assignments to oversee Muslim services and that the Administration is aware of "past actions" against Muslims by Dicus, and yet continue to assign him to oversee Muslim prayer services. Defendants argue that Plaintiff has not alleged any policy or practice of discrimination against his free exercise of religion.

Plaintiff claims, and attaches four supporting affidavits from other inmates claiming, that

- 4 -

Dicus has threatened Howard and made him hold the wall for long periods, to disrupt his Islamic prayer.

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). Where a genuine dispute of material fact exists, however, the court will assume the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor . . . .").

If the nonmoving party can show that, for specified reasons, it is unable to present essential facts in opposition to a motion for summary judgment, Rule 56(d) permits the court to defer consideration of the motion, deny the motion, allow for additional discovery, or issue any other appropriate order. Where the parties have not yet had the benefit of discovery, "summary judgment is disfavored . . . particularly in cases involving confined pro se plaintiffs." Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004) (citing Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988)).

/ / /

/ / /

IV.     ANALYSIS

    A.  **First Amendment Retaliation Claim**
        1.  **Administrative Exhaustion**

Defendants argue that Howard failed to exhaust his administrative remedies with regard to his retaliation claim against Defendant Bloomfield, because he did not raise a separate informal level grievance regarding falsification of Notice of Charges. The Prison Litigation Reform Act (PLRA) requires that before bringing a § 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion must be proper, meaning that the prisoner must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). The level of detail needed in a grievance to properly exhaust under the PLRA depends on the applicable grievance procedures of each individual prison. Jones v. Bock, 549 U.S. 199, 218 (2007). In the absence of a prison policy or procedure specifying a particular level of detail at which grievances must be stated, the Ninth Circuit has held that a grievance is sufficient for exhaustion purposes "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).

In this case, the Court finds that Howard has exhausted his administrative remedies with respect to his claims against Bloomfield. Howard initially filed an informal grievance on November 12, 2011, three hours after his property was taken. This form does not discuss any Notice of Charges, but does discuss Plaintiff's underlying grievance about being wrongfully searched and targeted, in retaliation for requesting grievance forms and for filing a civil rights lawsuit. Plaintiff has alleged that he was never notified of the specific charges filed against him, until the date of his hearing on November 21, 2011. The Notice of Charges provided in Defendant's exhibit has a section regarding "Service" that is completely blank, and Defendants have not alleged that Howard was aware of the charges prior to November 21, 2011. The requirement of administrative exhaustion cannot be held to have been violated at a time when it would have been impossible for Plaintiff to know of the alleged false filing of charges. Furthermore, in requesting review of the denial of his initial grievance, Howard *did* assert in his

First Level Complaint that the Notice of Charges resulting from the conduct underlying his initial grievance was retaliatory. Finally, Howard alleges that he disputed and pled "Not Guilty" to the charges when he was notified of them at his administrative hearing on November 21, 2011.

It is enough for purposes of exhaustion that Howard's grievances put Bloomfield and the prison on notice of "the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120. In this case, that wrong was a property confiscation and allegedly false filing of charges against Howard, in retaliation for his request for grievances and for his pending civil rights litigation. Howard has thus sufficiently exhausted his administrative remedies.

### 2.  Sufficiency of Retaliation Claim

In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere *threat* of harm can be an adverse action." Watison v. Carter, 688 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Id. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. Rhodes, 408 F.3d at 567-68. The Plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison, 668 F.3d at 1114. A Plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

In this case, Howard has properly asserted that false charges were filed against him and that he was punished and lost gym time, a "more than minimal" harm, in retaliation for requesting and filing grievances, and for having filed a pending civil rights case. Defendants

argue that possession of unauthorized property in prison is not a protected activity. Plaintiff argues, and the Court agrees, that this misrepresents Howard's claim. What is at issue is not whether Howard was allowed to possess unauthorized property, but rather, that Bloomfield allegedly filed a false Notice of Charges against Howard. The protected conduct at issue is the filing of a grievance form and of civil rights litigation.

Defendants further argue that the undisputed evidence shows that the reason why Bloomfield searched Howard's cell was to conduct a standard cell compliance check, and that therefore Howard has not made out the required fifth element of his retaliation claim, regarding an adverse action that did not reasonably advance a legitimate correctional goal. Again, the Court finds the Defendants' inquiry on this element to be misplaced. An earlier Motion to Dismiss already dismissed Count III of Howard's Complaint, which was centered around the search of his cell and confiscation of his property. The claim at issue in the instant motion has to do with the charges Bloomfield filed against Howard. The Notice of Charges filed against Howard claims that he gave false information and organized a work stoppage and demonstration. Howard claims that these charges were false, and were falsely filed. The undisputed facts show that the charge regarding a work stoppage or demonstration was subsequently changed to "Possession Trade of Unauthorized Property" after Howard's hearing. Defendants briefly argue in a footnote that "Work Stoppage/Demonstration" charges are a "catch-all" charge, without citing to any policy on this matter. Therefore, material issues remain in dispute regarding whether false charges were filed against Howard in retaliation. The filing of false charges would not "reasonably advance a legitimate correctional goal."

Plaintiff has alleged a chronology of events from which a factfinder could infer retaliatory intent: that he filed a civil rights complaint on November 1, 2011, that he requested a grievance form while officers searched his cell on November 12, 2011, and that on this same date, the Notice of Charges were filed against him in retaliation for both of these protected activities. Having false charges filed against a prisoner could reasonably "chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568. At the hearing on this motion, Defendants argued that the officers did not know about the civil

rights lawsuit, since it had not yet been screened, and a request for representation by the officers was not filed with the Attorney General's office until the following February. Regardless of when the complaint was screened or when a request for representation was filed with the Attorney General's office, it is possible that the officers became aware of Howard having filed the litigation in early November. Furthermore, they were certainly aware that Howard requested grievance forms from them while they were searching his cell. Since Howard has raised both the grievance forms and the litigation as protected activities that were retaliated against, material issues of fact remain in dispute regarding Howard's First Amendment Retaliation claim. Therefore, the Court denies summary judgment, and this claim shall proceed.

### B. First Amendment Free Exercise Claim
#### 1. "Substantial Interference" with "Central Tenet" of Religion

To raise a viable claim under the Free Exercise Clause, a prisoner must initially make a showing that Defendant has burdened a practice or belief that is "sincerely held" and "rooted in religious beliefs." Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (abrogating an earlier standard, the "central tenet or belief test", from Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997)). If such a belief is substantially burdened, "the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Turner sets out four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates, or the allocation of prison resources generally; (4) and whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.

Defendants argue that in order to reach the level of a constitutional violation, the interference with one's practice of religion "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine."

Freeman, 125 F.3d at 737. Plaintiff argues in his response that the chanting of the Takbir, particularly during Eid prayer, is central to Islamic doctrine and was substantially interfered with. Neither Plaintiff nor Defendants are applying the correct preliminary standard. The "central tenet or belief test" has since been abrogated by Shakur v. Schriro. 514 F.3d at 884-85. The preliminary inquiry, before reaching the Turner test, is whether a belief that is sincerely held and rooted in religious belief was substantially burdened. Plaintiff has certainly made out, on the undisputed facts, that his Eid prayer and Takbir chanting is a sincerely held ritual that is rooted in his Islamic religious belief.

At the hearing on this motion, Defendants also raised the argument that Dicus' conduct resulted in only a temporary stoppage of prayer, and that Howard and other prisoners were free to resume their prayer regardless of Dicus' yelling and verbal threat that "I kill Muslims". Howard claims, through his Complaint and through supporting affidavits, that the prayer had to be stopped, that Howard and other participants were unable to perform prayer chants that were fundamental to their Eid ceremony, and that regardless of whether the prayer was able to be resumed, "the spirit of prayer was gone" and Howard himself was unable to resume prayer. Whether the interruptions and threats during the prayer, which, at the very least, prevented chanting that was central to the prayer, constituted a "substantial burden", is therefore a disputed issue of material fact, and is inappropriate for summary judgment. See Howard v. Skolnik, 372 F. App'x 781 (9th Cir. 2010) (vacating summary judgment where factual disputes remained as to whether cancellation of certain prayer services created substantial burden on prisoner's religion).

**2. Policy or Regulation of Putting Dicus in Oversight of Prayers**

Howard's Free Exercise claim was brought against Defendant Dicus in both his individual and official capacity. In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official was the agent was the moving force behind the violation. Monell v. N.Y. City Dep't of Social Serv's, 436 U.S. 658, 690 (1978). Defendant argues that Plaintiff does not allege that there was a policy or regulation in place to prevent or interfere with Plaintiff's practice of his religion. It is undisputed that official NDOC policy permitted the Eid prayers and other similar Islamic group prayers to take place. However,

Plaintiff has alleged that Defendant Dicus has repeatedly interfered with prayer services, and that authorities are aware of this interference, and continue to assign him to oversee the services. Plaintiff alleges an ongoing pattern of intimidation and interruption of prayer services, and an administrative policy of allowing or promoting these interruptions. Defendants do not address this allegation, or whether it would be sufficient to make out a Free Exercise claim.

Therefore, there are factual disputes remaining over whether there was a policy in place of assigning Dicus to oversee Muslim prayers, with the knowledge that he would harass and threaten Howard and other participants, and potentially substantially burden the prayers. The Court does not reach the Turner four-factor analysis because Defendants have merely raised the incorrect argument that Plaintiff has not alleged any policy or regulation; Defendants have not raised a legitimizing argument for the alleged policy, under the four-factor test. The Court therefore denies summary judgment on Howard's First Amendment Free Exercise claim, and both the individual and official capacity claims against Defendant Dicus shall proceed.

V.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

**DATED** this 23rd day of September, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**